## Case No. 15,405.

### UNITED STATES v. HOWELL et al.

[4 Wash. C. C. 620: [1] 2 Am. Lead. Cas. (5th Ed.) 419.]

Circuit Court, D. New Jersey. Oct. Term, 1826.

BONDS FOR PAYMENT OF DUTIES—RELEASE OF SURETIES—STATUTORY BONDS.

1. If a creditor, whether the United States or an individual, give time to the principal in a bond prior to the breach of the obligation, without the consent of the surety, the surety is discharged, and he may set up the defence at law. Aliter, if the time be given after the breach, for then the only remedy of the surety is in equity.

[Cited in U. S. v. Garlinghouse, Case No. 15,-189.]

[Cited in American Button-Hole, O. & S. M. Co. v. Gurnee, 44 Wis. 64. Cited in note to Braman v. Howk. 1 Blackf. 394. Disapproved in Carr v. Howard, 8 Blackf. 192. Cited in Chapman v. McGrew. 20 Ill. 104. Disapproved in Dickerson v. Board, 6 Ind. 131. Cited in Dunham v. Downer, 31 Vt. 259, 265. Cited in brief in Green v. Lake, 13 D. C. 170. Cited in Nicholas v. Austin. 82 Va. 824, 1 S. E. 136; Paine v. Voorhees, 26 Wis. 531.]

2. If the law prescribe the terms of a bond to be taken, and one be taken variant therefrom, it is void, so far at least as it is variant. But the officers of government may, without any law, take securities from the debtors to the public for what they may owe.

[Cited in U. S. v. Brown, Case No. 14,663; U. S. v. Humason, Id. 15,420; U. S. v. Mynderse, Id. 15,850.]

[Cited in brief in Bower v. Commissioners, 25 Pa. St. 70; Cited in Union Wharf v. Mussey. 48 Me. 311; Inhabitants of Scarborough v. Parker. 53 Me. 253; Sooy v. State, 38 N. J. Law. 331; State v. Purcell, 31 W. Va. 61, 5 S. E. 310: Stovall v. Com., 84 Va. 249, 4 S. E. 381.]

---

1 [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

---

1 [Reprinted by permission.]

This was an action of debt on a bond executed by the defendants [Samuel Howell and John L. Howell]. After reciting that certain bonds to the United States for the payment of duties had been executed by Reeve Lewis & Co. and Joseph S. Lewis as their surety, payable on certain days, which are set forth, and that the United States (in some of the counts, and the secretary of the treasury in others), had agreed to extend the time of payment of said bonds for one year from the day of payment thereof respectively, the condition of the bond is, that the obligors in those bonds shall pay to the collector the amount thereof, on or before the expiration of the said periods of one year from those when the same had respectively become due according to the tenor of them, with interest. Breach, that the obligors in those bonds had not paid to the collector the amounts of said bonds, on or before the expiration of one year from the time they had respectively become due, &c. Plea, that on such a day (after the year when the said bonds had become due), the plaintiffs promised and agreed with the surviving partner of Reeve Lewis & Co. to postpone and defer the payment of, and all proceedings at law and claims to the payment of all the said bonds, for a long time after the said respective terms of one year from the periods when the same respectively became due, to wit, &c. And that in pursuance of said agreement, the plaintiffs did postpone the payment, and all claims and demands for the payment thereof, and did allow to the obligors in said bonds further time for payment of said bonds, beyond the said term of one year, &c., which said agreement was made without the assent, concurrence, or participation of the defendants, for which cause they say they are discharged from any liability to the plaintiffs, &c. General demurrer, and joinder.

In support of the demurrer it was contended by the district attorney, that although a new contract between the creditor and the principal, by which the former binds himself to extend the time of payment, without the consent of the surety, will in general discharge him, yet that the surety, where he is bound by a sealed instrument, can not plead this matter at law, and that none of the cases go to that extent. He cited the following cases: 6 Bin. 292; Armstrong v. U. S. [Case No. 549]; [U. S. v. Kirkpatrick] 9 Wheat. [22 U. S.] 736; 2 Southard [5 N. J. Law] 584; 5 Barn. & Ald. 187; Cross v. U. S. [Case No. 3,434]; Shep. Touch. 397, 382; 3 Wils. 352; Cowp. 47; 7 Johns. 332; The Margaretta [Case No. 9,072]; 17 Johns. 384; 2 Johns. Ch. 560; 3 Yeates, 157.

For the defendant, the following cases were cited: [Miller v. Stewart] 9 Wheat. [22 U. S.] 703; 2 Brown. Ch. 578; 18 Ves. 20; 2 Ves. Jr. 540; 2 Johns. Ch. 557; 3 Bos. & P. 365; 2 Bos. & P. 62; 1 Bos. & P. 419; 8 East. 576; 3 Wils. 530; 10 Johns. 180; 2

Halst. [7 N. J. Law] 89; 3 Halst. [8 N. J. Law] 27; Ludlow v. Simmond, 2 N. E. Cases in Error [2 Caines. Cas.] 29; [U. S. v. Fisher] 2 Cranch [6 U. S.] 358, 380, 398; 2 Day, 236; 3 Johns. 369; 7 Johns. 339.

Mr. Elmer, U. S. Dist. Atty.
Mr. Wood. for defendants.

WASHINGTON, Circuit Justice. The main question in this case is, whether the indulgence granted to the surviving partner of Reeve Lewis & Co. by the United States, by extending the time for the payment of their bonds, discharged the defendants, their sureties, at law?[2] The general principle established by all the cases is, that if the creditor, without the assent of the surety, expressly, or tacitly yielded, give time to the principal, by enlarging the credit beyond the period mentioned in the contract, the surety is discharged. The principle of the decisions is. that the surety guaranties the performance by his principal, of a particular contract, and engages for nothing more. If, without his consent, that contract be varied by the act of the creditor, the surety is not bound by the new contract; and by the act of the creditor, the old one cannot be enforced according to its terms without violating the new agreement, which, although not binding on the surety, is so upon the parties to it.

But it is contended by the counsel for the plaintiff, that, since a bond cannot be discharged at law but by something of equal dignity, it is no defence to an action upon the bond against the surety, that, by a parol agreement with the principal, without the assent of the surety, the creditor has bound himself to enlarge the time of payment stipulated in the bond; and in support of this argument, reliance is placed upon the case of Davey v. Prendergrass, 5 Barn. & Ald. 187. I entirely agree in the decision of that case, and in the application of the principle stated to it. The undertaking of the surety, if such he may be considered. was, that he himself would pay, within one month after demand, such balance. not exceeding £500, as, upon the settlement of accounts between the plaintiffs and S. P. and J. P., should appear to be due from the latter to the former, for coals to be delivered by the plaintiff to those persons. As between the plaintiff and the defendant, the latter made himself the principal debtor; and it would therefore be difficult to state any legal principle upon which the defendant could be discharged on the ground of the parol agreement between the plaintiff and those who, it is possible,

[2] The argument relied upon in support of the demurrer was, that this being the case of a surety in a sealed instrument, no contract between the obligee and the creditor for extending the time of payment, can discharge the surety at law. To this position the opinion is confined. on account of the importance of the question to which it gave rise.

were, in relation to the defendant, the principal debtors; although this was by no means obvious from the terms of the defendant's engagement. Indeed the defence could not have been maintained at law, even if the parol agreement had been made with the defendant himself, upon the principles of the common law stated by the court.

If, in this case, the court meant to lay it down as law, that a surety in a bond, conditioned for the payment of money or the performance of certain acts by a third person, cannot be discharged from his obligation except by some instrument of equal dignity, I must be permitted to dissent from such a doctrine, and to maintain that it is insupportable by a single authority. Will not performance, in pais, by the principal, discharge the surety? May not the surety, and may not even the principal, discharge himself by acts in pais, tending to excuse the non-performance, by showing that it was occasioned by the conduct of the creditor? If this be so, (and who can deny it,) where is the legal principle which shall prevent the surety from pleading as an excuse for the non-performance of his engagement, that the creditor interfered, and prevented the performance by entering into a new contract with the principal; by which the performance by him was dispensed with, and postponed to a period beyond that mentioned in the contract which the surety had guarantied? The question at law then is, whether the contract of the surety has, without his consent, been changed by the obligee? If it has, the obligee has, by his own act, defeated the condition of the surety's bond, and consequently discharged him from his obligation at law, as well as in equity. This leads to the inquiry, whether in the particular case in which the surety relies upon a discharge so brought about, the contract which he bound himself to guaranty, has been changed?

If that contract be to pay money, or to perform a particular act on a particular day; before which day, the time of payment or performance is enlarged by a parol agreement between the obligee and the principal, without the assent of the surety; I hold that the surety is discharged; upon the ground that the terms of his contract are varied without his consent, by the act of the obligee. But if the new agreement be made after the time for payment or performance has elapsed, so that the bond of the surety has become forfeited, I do not perceive upon what legal ground it can be alleged, that the contract of the surety has been varied by such subsequent agreement. Such an agreement, I admit, deprives the surety of his equitable right to call upon the creditor to enforce payment or performance, and upon his refusal to ask the aid of a court of chancery to compel the obligee to do so; and since the obligee has, by his subsequent agreement, disabled himself from proceeding against the principal; that court will, upon equitable principles, relieve the surety, and enjoin proceedings at law against him. These appear to me to be the principles which are fairly to be extracted from the numerous cases upon this subject. The difference between an extension of the time by the obligee before and after the bond is forfeited, is laid down by Lord Eldon in the case of Rees v. Berrington, 2 Ves. Jr. 540, and is, I think, founded upon principles of law.

Upon the whole I am of opinion, that since the new agreement with the principal debtors in this case was entered into after the time when their debts to the United States became due, such an agreement does not at law amount to a discharge of the defendants. Cro. Eliz. 46.

It has been made a point whether this bond, not being required to be taken by any act of congress, is a valid one? My opinion upon this point is, that where a statute requires an official bond to be taken, and prescribes substantially the terms of it, it must conform to the requisitions of the statute, and if it go beyond them it is void, so far at least as it exceeds those requisitions. But I have no doubt that the officers of the government may legally take bonds, or other securities, for debts due to the United States, although no act of congress authorises their being taken in the particular case. The opinion given upon these points renders it unnecessary to consider the question raised by the district attorney, whether the principles laid down in deciding the first point can be applied to the United States.

Judgment must be entered upon the demurrer for the United States.