Charles F. BOOTH, Plaintiff-Appellee,
Plaintiff-Cross-Appellant,

v.

NORTH AMERICAN ALUMINUM COR-
PORATION, Defendant-Appellant,
Defendant-Cross-Appellee.

Nos. 19667, 19668.

United States Court of Appeals,
Sixth Circuit.

March 24, 1970.

John L. Schwendener, Kalamazoo, Mich., for appellant and cross-appellee.

Robert L. Borsos, Kalamazoo, Mich., for appellee and cross-appellant.

Before WEICK and CELEBREZZE, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

CELEBREZZE, Circuit Judge.

This is an appeal from the United States District Court for the Western District of Michigan, Southern Division. After trial, the Court held that Charles F. Booth was entitled to a sales commission from North American Aluminum Corporation, formerly known as "Modu-Wall, Inc.," and entered judgment accordingly. North American appeals on the ground that no commission was due, or, in the alternative, that the award was too great. Booth cross-appeals, claiming that the District Court did not award him enough.

Booth, at all times herein relevant, was a sales agent for North American under

a two-part agent agreement. One part is captioned "Agent Schedule", the other, "Agent Agreement". The documents, both of which are in evidence, are expressly incorporated into one another. Paragraph 4 of the Agent Agreement assigns to Booth an exclusive sales territory, outside of which he is not permitted to solicit and inside of which no other sales agent is permitted to solicit, to-wit: "New York States [sic] Counties as follows: New York, Bronx, Queens, Brooklyn, Richmond, Nassau, Suffolk, Westchester, Putnam, Duchess."

Paragraph 5 of the Agent Agreement provides that the Agent's sole compensation is by commission, to be computed in accordance with the provisions of the Agent Schedule.

Paragraph 4 of the Agent Schedule indicates that under certain circumstances North American has the right to split "the Agent's commission", and provides the manner in which it may be split:

"4. SPLIT COMMISSIONS: Notwithstanding paragraph "5" of the Agent Agreement, the Company shall have the right to split the Agent's Commission earned under this Agreement only on sales made under the following circumstances:

"A. Where the architect is located in territory covered by this Agreement and the purchasing office of the successful bidding contractor is not located in territory covered by this Agreement; and

"B. Only when the Company's Products covered by this agreement are specified by the architect, or, the Company Agent, in whose territory the architect is located, obtains approval to bid:

and in the manner following, viz: 50% thereof to the Company Agent in whose territory the architect is located; 40% thereof to the Company Agent in whose territory the purchasing office of the successful bidding contractor is located, and 10% thereof to the Company Agent in whose territory the project is located."

North American is a supplier of builder's products, among which is a curtain wall, an exterior wall for modern buildings hung on the steel framework to keep out the elements. Curtainwalls are fabricated by North American to order from specifications for each individual job. Frank Grad, an architect with offices in Newark, New Jersey, examined the curtainwall at a booth at a New Jersey A.I. A. convention, "fell in love" with it, and wanted it for the American Radiator and Sanitary Corporation building at Piscataway, New Jersey, which he was designing. Grad's general contractor on this project was Turner Construction Company, whose purchasing office was in New York City, Booth's territory. The owner did not require competitive bidding for general contractor: Turner was apparently selected by Grad without regard to cost.

From the testimony it appears that Grad selected Winner-Whelan Company, a New Jersey contractor and manufacturer's representative, to install the curtainwall. Again, there was no competitive bidding. Winner-Whelan agreed to install the curtainwall and subcontracted the job with Turner, which apparently had little or nothing to do with the selection of the building's exterior. Winner-Whelan contracted to purchase the wall from North American, installed it on the American Radiator Building, and was paid under its subcontract the cost of the wall plus the cost of installation.

Booth, who, by his own testimony, had nothing whatever to do with Frank Grad or the American Radiator and Sanitary job, claimed a split commission under Paragraph 4 of his Agent Schedule on the ground that he was the "Company Agent in whose territory the purchasing office of the successful bidding contractor is located." Booth claimed that Turner's New York office was the purchasing office of the "successful bidding contractor." The District Court so held and awarded Booth a commission not only on the cost of the curtainwall, but also on the cost of installation.

There are essentially three issues on this appeal: First, whether Clause 4A of the Agent's Schedule renders Paragraph 4 inapplicable to this transaction; second, assuming Paragraph 4 would otherwise apply, whether Booth is the "Company Agent in whose territory the purchasing office of the successful bidding contractor is located"; third, the amount of any commission Booth may have been entitled to. This cause is remanded to the District Court for further findings on each of these issues, if necessary, in accordance with the following principles. Rule 52, Federal Rules of Civil Procedure. *See* Traylor v. United States, 396 F.2d 837 (6th Cir. 1968). See also, United States v. Forness, 125 F.2d 928, 942–943 (2d Cir. 1942).

Paragraph 4 of the Agent Schedule provides:

"The Company shall have the right to split the Agent's commission earned under this Agreement only on sales made under the following circumstances:

"A. Where the architect is located in territory covered by this Agreement and the purchasing office of the successful bidding contractor is not located in territory covered by this Agreement; "

The plain meaning of this provision is that Booth may be entitled to a split commission "only" where the architect is located in "territory covered by this agreement" *and* where "the purchasing office of the successful bidding contractor is not located in territory covered by this Agreement." It is undisputed that Frank Grad, the New Jersey architect, was not located in territory covered by Booth's agreement, that is, New York. Booth himself agreed that "the architect was not located in the territory covered by this agreement." Therefore, under a literal reading, Booth was entitled to no split commission since Frank Grad *was not* in his territory. In addition, if Turner was the "successful bidding contractor," as the District Court held, then Booth was entitled to no split commission

because Turner's purchasing office *was* in his territory.

No contract language can be interpreted only in the abstract. If trade practice, custom or usage has infused special meaning into these words, which both parties bargained with reference to, then it should be proved affirmatively, and findings should be made with regard to it. *See* Edward E. Morgan Co. v. United States, 230 F.2d 896, 902 (5th Cir. 1956). *See generally*, 2 Corbin, Contracts §§ 555–557 (1960 ed.). *Cf.* Sadler Machinery Co. v. Ohio, 202 F.2d 887, 892 (6th Cir. 1953); United States v. Aluminum Company of America, 233 F.Supp. 718, 722–726 (E.D.Mo.1964), aff'd per curiam, 382 U.S. 12, 86 S.Ct. 24, 15 L.Ed.2d 1 (1965). In addition, in aid of determining whether this split commission clause should apply, the District Court should find as a matter of fact what the purpose of such clauses are in the industry or trade, if they are of general use, or what the purpose of paragraph 4 was in this contract, if they are not.

■ The second issue is whether, assuming paragraph 4 does apply, Booth was entitled to 40% of the commission on the American Radiator and Sanitary job on the ground that he was the "Company Agent in whose territory the purchasing office of the successful bidding contractor is located." Asserting that Turner was the "successful bidding contractor," Booth claims he was entitled to that commission. North American, on the other hand, claims that Winner-Whelan, whose offices are outside of Booth's territory, was the "successful bidding contractor." Through tortuous reasoning, the District Court held that Turner was the "successful bidding contractor," after the District Court had admitted various items of parol evidence from which it implied a combination between Winner-Whelan and North American to wrongfully deprive Booth of his split commission, although such collusion was neither plead nor proved. We hold that in the absence of an allegation of

fraud or a clearer showing of ambiguity than was present in his case (the District Court said only that the contract was "not a model of clarity"), the admission of parol evidence to alter this contractual term was improper. *See, e. g.*, Hines v. Ward Baking Co., 155 F.2d 257, 260 (7th Cir. 1946).

■ It is undisputed on this record that neither Turner nor Winner-Whelan bid for its part of the job. Each was selected by Frank Grad, the architect, without regard to cost. Since neither bid, under a literal reading of this clause, neither could have been a "successful bidding contractor." Again, although the District Court made an oblique finding on this issue, only a modicum of evidence was adduced at trial to indicate whether the phrase "successful bidding contractor" has a different meaning in the trade than it does in popular usage. With this issue, as with the first, if the reasonable expectations of the parties, as proven in the context of the customs and usages of the trade, the prior course of dealings of the parties, and the purpose of this agreement, was that "successful bidding contractor" can apply where no one bid, it will be effectuated. But this must be affirmatively proved by the Plaintiff and found as a fact by the Court. In the absence of such proof, there can have been no "successful bidding contractor," and Booth is entitled to no split commission. If, however, under this analysis, the District Court finds that either Turner or Winner-Whelan could have been the "successful bidding contractor," it must decide between them on the basis of the mechanics and all the facts and circumstances surrounding this transaction, and the purpose of the contract as amplified by the usage of trade and prior course of dealings between the parties. It will not suffice to conclude, without citation of reason or authority, that Winner-Whelan was an "agent" of North American; therefore Turner must have been the "successful bidding contractor."

■ The third issue is, assuming Booth is entitled to a split commission, how the commission should be computed. We hold that if Booth is entitled to a commission, it should be based solely on the cost of the "product," *i. e.*, the curtain-wall, and not on the cost of installation, which the contract nowhere mentions. The District Court properly found the commission rate must vary depending upon whether this was a low bid or a high bid job. It erred, however, in applying a "compromise" rate. On remand the District Court should make a factual finding whether this was a high, medium, or low bid job, and apply the appropriate rate of commission under the circumstances.

The judgment of the District Court is vacated, and this cause is remanded for findings consistent with this opinion.